**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MICHAEL BRODIE,** | : |
| | : |
| **Plaintiff** | :     **CIVIL ACTION NO. 3:16-0208** |
| | : |
| **v** | : |
| | :     **(JUDGE MANNION)** |
| **Supt. JOHN D. FISHER,** *et al.,* | : |
| | : |
| **Defendants** | : |

**MEMORANDUM**

## I.   Background

Plaintiff, an inmate formerly confined in the Smithfield State Correctional Institution ("SCI-Smithfield"), Huntingdon, Pennsylvania[1], filed the above captioned civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). The named Defendants are the following employees of the Department of Corrections and SCI-Smithfield: Chief Grievance Officer Dorina Varner, former Superintendent Jon D. Fisher, Grievance Officer Lisa Hollibaugh, former Safety Manager David Fultz, Registered Nurse Supervisor Mary Moyer, Nurse Lisa, Lieutenant Gaff and Correctional Officers Vough and Rhodes. Id.

Currently pending before the Court is Defendants' motion to dismiss the Plaintiff's complaint. (Doc. 13). The motion is fully briefed and is ripe for disposition. For the following reasons, the Court will grant the motion.

---

[1]Plaintiff is currently housed in the Fayette State Correctional Institution, LaBelle, Pennsylvania.

## II.   Allegations in Complaint

Plaintiff alleges that on March 17, 2014, at approximately 8:30 p.m., during block recreation, Plaintiff "cut his right hand/finger on the edge of the table provided for inmates to play cards; dominos; or any other games". (Doc. 1). He claims that on this date and time, Defendant Rhodes was working the triage area and instructed Defendant Vough to transport Plaintiff to the Medical Department of the jail. Id.

Upon arriving at the Medical Department, Defendant, Nurse Lisa, "attended the gaping wound on Plaintiff's right hand/finger; as the report to Lieutenant Gaff was made by said Nurse, the wound's severity was beyond the jail's ability to repair." Id. Lt. Gaff then "made a notification to center control that there were no doctors in the prison and that a transport to an outside facility (hospital) was necessary." Id. Plaintiff states that "amid said request, Nurse Lisa took other measures to impede the emergency request of sending Plaintiff to the outside facility by calling 'Doctor Vincent' to come in three hours later to come to work while the gaping wound to Plaintiff's hand/finger remained open to infection, thus treating such emergency as mediocre." Id. Dr. Vincent then "treated the gaping wound by numbing the wound by spraying it; giving Plaintiff a needle; then stitching it up and wrapping it with gauze." Id. Plaintiff claims that "as a result of the gross

2

negligence of medical staff and otherwise, Plaintiff's hand and finger loss feeling in certain areas and has a contemporary (sic) condition that impedes certain movements that are pivotal to writing and holding material in said right hand." Id.

On March 18, 2014, Plaintiff filed Grievance No. 5023020-14, "demanding to be compensated for the pain and injuries endured due to the deliberate indifference of said facilitator's negligence in ignoring the antecedent caveats of said injurious structure of the table in the recreation room." Id.

On March 20, 2014, grievance Coordinator Lisa Hollibaugh "acknowledged said grievance" and on March 28, 2014, Safety Manager David Fultz "responded to the grievance with a denial", stating that "the sharp edges on the tables had been removed as of March 25, 2014." Id.

On April 4, 2014, Plaintiff filed an appeal of the denial of Grievance No. 5023020-14 to the Superintendent, "contending the culpable neglect of said Maintenance Safety Manager, thus, re-asserting the compensation request." Id.

Plaintiff alleges that on April 14, 2014, the Superintendent affirmed the Safety Manager's denial, "under the guise that the issue had been resolved insofar as, after the issue contended had transpired; Maintenance (Mr. Fultz) had taken corrective action." Id.

Plaintiff states that "subsequently, on April 21, 2014, the issue was

3

appealed to the Final Review, Secretary's Office for which a constituent for Dorina Varner, Chief Grievance Officer, whereas her reasoning for upholding the response of her subordinates was identical to Superintendent Jon D. Fisher; but she actually denied compensation", stating that her "reasoning for upholding the response of Facility Employees of Smithfield was that because the injuries were attended to after the being injured by the negligence of said Officers, and therefore, Plaintiff was not entitled to any compensation for those reasons." Id.

After the incident Plaintiff claims to have submitted a request to staff to be seen by Dr. Vincent because he "was losing feeling in the right hand, and also to notify him that [Plaintiff's] hand was purple and swollen." Id. Dr. Vincent gave Plaintiff "an unknown prescription pain pill for a few days" at the end of which Plaintiff's "felling in [his] hand was completely gone and felt like it was completely numb." Id.

Plaintiff claims that "thereafter, [he] was transferred to SCI-Fayette whereas a sick call slip was sent to Medical Department for an X-ray due to lack of feeling in [Plaintiff's] hand" and "the prison informed [him] that this was a permanent injury." Id.

On February 8, 2016, Plaintiff filed the instant action in which he seeks compensatory and punitive damages for Defendants' "deliberate indifference to the protection and safety of Plaintiff's living conditions which subsequently led to the structure of said facility to cause injury to Plaintiff" as well as to

Plaintiff's medical treatment "by terminating Lieutenant Gaff's order to send Plaintiff to an outside hospital that would have had an emergency vehicle come get Plaintiff from the prison in ample time to avoid permanent injury." Id.

### III.    **Motion to Dismiss**

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual

allegation." Id. (quoted case omitted).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief". Id. at 211 (quoted case omitted).

In addition, because Plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. §1997e apply, as do the screening provisions of 28 U.S.C. §1915(e), given that he was granted *in forma pauperis* status to pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n. 6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless *sua sponte* rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez, supra.

## IV.    Discussion

### A.  Eighth Amendment Conditions of Confinement

The Eighth Amendment's prohibition of cruel and unusual punishment

does not only restrain affirmative conduct, such as the use of excessive force against prisoners. See, e.g., Hudson v. McMillian, 503 U.S. 1, 5 (1992). It also imposes a duty on prison officials to provide humane conditions of confinement and to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Id. at 828. A substantial risk of serious harm "may be established by much less than proof of a reign of violence and terror," but requires more than a single incident or isolated incidents. See Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir.1985). To determine whether officials operated with deliberate indifference, courts question whether they consciously knew of and disregarded an excessive risk to the prisoner's well being. Farmer, 511 U.S. at 840–44. Not only must a prison official be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but the official "must also draw the inference." Farmer, 511 U.S. at 837. "[A] prison official is deliberately indifferent when he *knows or should have known* of a sufficiently serious danger to an inmate." Young v. Quinlan, 960 F.2d 351, 361 (3d Cir. 1992) (emphasis in original). The term "should have known" is a term of art, which

> [d]oes not refer to a failure to note a risk that would be perceived with the use of ordinary prudence. It connotes something more than a negligent failure to appreciate the risk ..., though something less than subjective appreciation of that risk. The "strong likelihood" of [harm] must be "so obvious that a lay person

7

> would easily recognize the necessity for" preventative action. [T]he risk of ... injury must be not only great, but also sufficiently apparent that a lay custodian's failure to appreciate it evidences an absence of any concern for the welfare of his or her charges.

Id. (quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1025 (3d Cir. 1991)) (citation omitted, alterations in original). "Mere negligence claims do not constitute 'deliberate indifference.' " Innis v. Wilson, 334 Fed.Appx. 454, 475 (3d Cir. 2009) (*per curiam*). As such, prison officials are not subject to liability as the result of negligent acts that cause unintended injury to inmates. Daniels v. Williams, 474 U.S. 327 (1986)(holding that inmate who was injured when he slipped on a pillow that was negligently left on the stairs by deputy sheriff does not state claim under §1983).

Plaintiff's allegations fail to establish a substantial risk of harm. Plaintiff fails to allege evidence of any prior incident in which Defendants were on notice of a danger and deliberately disregarded it. See Innis v. Wilson, 334 Fed. Appx. 454, (3d Cir.2009) (claim against maintenance staff as to table that collapsed properly dismissed; no allegation that staff were aware of risk of serious harm and failed to take steps); Simpson v. Horn, 25 F. Supp. 2d 563, 571 (E.D. Pa. 1998) (no conditions claim where inmate only complained of rashes and two small cuts from edge of bed). As such, Brodie cannot establish a substantial risk of serious harm through a single incident. Wallace v. Doe, 512 Fed.Appx. 141, 144 (3d Cir. 2013) (per curiam) (quoting Riley, 777 F.2d at 147).

## B. Eighth Amendment Medical Claim

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id.

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to

9

order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Id., 991 F.2d at 69. If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372 F.3d 236.

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685

F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer v. Carlson, 685 F. Supp. at 1339.

The allegations in Plaintiff's complaint clearly demonstrate that Plaintiff received medical attention, and that the attention he received lacks the requisite deliberate indifference to support a Section 1983 claim. Once Plaintiff reported to the medical department for treatment, he was immediately seen, and his injury was assessed and then treated.

At best, Plaintiff's complaint demonstrates his disagreement with the type and timeliness of the treatment rendered. Though he may have wished to have been seen by an ER doctor and treated earlier, his disagreement with the course of action that Defendants took based on the injury he presented, is not enough to state a §1983 claim. Sample v. Diecks, 885 F.2d 1099, 1109 (3d Cir.1989) (citing Estelle, 429 U.S. at 105–06 (in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to

the conscience of mankind)). This is particularly so in light of the fact that there are no allegations in the complaint that any of the Defendants intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer; Rouse. Thus, the allegations in the Plaintiff's complaint amount to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. At most, the allegations in the complaint only rise to the level of mere negligence. As simple negligence can not serve as a predicate to liability under §1983, Hudson v. Palmer, 468 U.S. 517 (1984), Plaintiff's civil rights complaint fails to articulate an arguable claim. See White, 897 F.2d at 108-110.

Even holding Plaintiff's complaint to the less stringent pleading standards of *pro se* plaintiffs, the allegations do not sufficiently allege deliberate indifference. Plaintiff does not suggest that the institution's medical staff were aware that there was an excessive risk to his health or safety but wantonly refused to provide him medical care. Spruill v. Gillis, 372 F.3d 218, 236 n. 12 (3d Cir. 2004) (stating that while a pro se complaint should be read liberally, an inmate plaintiff must still allege that defendant was aware of the risk and intentionally disregarded it). Thus, the allegations in the Plaintiff's complaint amount to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison.

### **C.** **Claims against Defendants Superintendent Fisher, Safety Manager Fultz, Grievance Officer Hollibaugh and Chief Grievance Officer Varner**

Plaintiff fails to state a claim against Defendants Fisher, Fultz, Hollibaugh and Varner, because the complaint reveals that they lack any personal involvement in the wrongs, and Plaintiff's allegations against these Defendants are based solely upon their supervisory roles.

Local government units and supervisors typically are not liable under §1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n. 8 (1985); Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 690-91 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). See also Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003)(citing Rode). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir.1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir.1995).  As explained in Rode:

A defendant in a civil rights action must have personal

> involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

A §1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n. 55. "[I]n an official-capacity action, ... a governmental entity is liable under §1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

With respect to these Defendants, a review of the complaint confirms that other then being listed as Defendants there are no specific assertions that any of these Defendants had any personal involvement in the purported violations of Plaintiff's rights under the Eighth Amendment. Rather, the claims asserted against these Defendants are premised either upon their respective supervisory positions within the DOC or their handling of Plaintiff's subsequent institutional grievances and appeals.[2]

---

[2]The Plaintiff alleges that Grievance Officer Hollibaugh acknowledged his inmate grievance and Safety Manager Fultz responded to it. His appeals (continued...)

However, dissatisfaction with the response to an inmate's grievances does not support a constitutional claim. See Alexander v. Gennarini, 144 Fed. Appx. 924 (3d Cir.2005) (involvement in post-incident grievance process not a basis for §1983 liability); Pryor-El v. Kelly, 892 F.Supp. 261, 275 (D.D.C.1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec.19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). Thus, the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." Flanagan v. Shively, 783 F.Supp. 922, 931–32 (M.D. Pa.1992), aff'd, 980 F.2d 722 (3d Cir.1992). Based upon an application of the above standards, such allegations are insufficient to satisfy the personal involvement requirement standard of Rode. Accordingly, Defendants Fisher, Fultz, Hollibaugh and Varner are entitled to entry of dismissal.

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant the Plaintiff leave to amend his complaint unless amendment would be inequitable or futile. See Grayson v.

---

[2](...continued)
of the grievance were denied by Superintendent Fisher and Chief Grievance Officer Varner.

Mayview State Hospital, 293 F.3d 103, 114 (3rd Cir. 2002). Since it is clear from Plaintiff's complaint, and supporting documentation, that Plaintiff received adequate medical treatment, and merely disagrees with the treatment he received during this time, the Court finds that amendment on Plaintiff's Eighth Amendment medical claim would be futile.

Likewise, with respect to Plaintiff's Eighth Amendment conditions of confinement claim, it is clear that Brodie cannot establish a substantial risk of serious harm through a single incident, and as such, any amendment would be futile.

## V.    Conclusion

For the reasons stated above, the Court will grant Defendants' motion to dismiss Plaintiff's complaint, for failure to state a claim. Since Plaintiff has not stated any cognizable federal claim, the Court, in its discretion, will decline to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(c)(3). See Smith v. Albert Einstein Med. Ctr., 378 Fed.Appx. 154, 158 (3d Cir. 2010). Plaintiff may re-file any state law claims in the appropriate Pennsylvania State Court. An appropriate order shall issue.

s/ Malachy E. Mannion
**Malachy E. Mannion**
**United States District Judge**

**DATE:** March 23, 2017
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-0208-01.wpd